**THE EXPERIMENTAL AIRCRAFT ASSOCIATION, INC.,**
Appellant,

v.

**Laird DOCTOR and Linda Doctor, Appellees.**

No. 14–01–00282–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 21, 2002.

Robert F. Ruckman, Dallas, for appellant.

Sharon Sue McCally, Houston, Guy H. Allison, Corpus Christi, for appellees.

Panel consists of Justices YATES, EDELMAN, and WITTIG.*

## OPINION

LESLIE BROCK YATES, Justice.

This is an interlocutory appeal from the denial of a special appearance. *See* TEX.

CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.2002). Appellant raises five points of error challenging the denial of the special appearance based on the trial court's conclusions that (1) appellant waived the special appearance and (2) the court has personal jurisdiction over appellant. Appellant also urges that the trial court erred in overruling its objections to appellees' response to the special appearance. Because we find that appellant had sufficient contacts with Texas to establish general jurisdiction, we affirm the trial court's order.

## Factual and Procedural Background

In the suit underlying this interlocutory appeal, appellees Laird Doctor and Linda Doctor sued Howard E. Pardue and appellant, The Experimental Aircraft Association, Inc. ("EAA"), for negligence after a July 29, 1999 plane crash during EAA's annual membership convention in Oshkosh, Wisconsin. Laird Doctor, who was participating in an aviation demonstration known as AirVenture '99, was rendered a quadriplegic when his plane collided on the runway with an aircraft piloted by Pardue. The Doctors and Pardue are all citizens of Texas. The Doctors filed suit in Harris County, Texas, against Pardue on October 15, 1999, and amended it May 12, 2000, to add EAA as a defendant, asserting jurisdiction under the Texas long-arm statute. TEX. CIV. PRAC. & REM.CODE ANN. §§ 17.041–.045 (Vernon 1997).

EAA filed a special appearance and original answer "subject to" its special appearance on July 7, 2000. A November 14, 2000 hearing was reset to February 13, 2001, but in the meantime, EAA participated in an agreed motion for continuance that the court granted. After hearing EAA's special appearance, the trial court

---

* Senior Justice Don Wittig sitting by assignment.

denied it on February 19, 2001. At EAA's request, the trial court made findings of fact and conclusions of law, determining that the exercise of personal jurisdiction over EAA satisfies both state and federal due process requirements. This interlocutory appeal followed.

### Waiver

We first address the Doctors' claim that EAA waived its special appearance by agreeing to a motion for continuance to postpone a trial setting before the motion was heard. The special appearance is governed by the plain language of Texas Rule of Civil Procedure 120a. Although EAA's motion for continuance was filed after its special appearance, by the plain language of the rule, it did not result in a general appearance.[1] *See Dawson–Austin v. Austin,* 968 S.W.2d 319, 323 (Tex.1998) (holding that a defendant did not waive her special appearance by subsequently filing a motion for continuance related to discovery). Subsequent motions may amount to waiver and result in a general appearance, but only if the defendant's act "recognizes that an action is properly pending or seeks affirmative action from the court." *Id.* at 322 (quoting *Moore v. Elektro–Mobil Technik GmbH,* 874 S.W.2d 324, 327 (Tex.App.—El Paso 1994, writ denied)). In this case, the agreed motion for continuance expressly notes that "EAA has entered a special appearance, objecting to personal jurisdiction." EAA's actions were not inconsistent with contesting jurisdiction and did not amount to a general appearance.[2] We

therefore address the merits of EAA's jurisdictional challenge.

### Standard of Review

The plaintiff has the initial burden of pleading sufficient allegations to bring the nonresident defendant within the provisions of the Texas long-arm statute. *See Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 633 (Tex.App.—Dallas 1993, writ denied). At the special appearance hearing, the nonresident defendant bears the burden of negating all bases of personal jurisdiction. *See National Indus. Sand Ass'n v. Gibson,* 897 S.W.2d 769, 772 (Tex.1995). If the plaintiff does not plead jurisdictional allegations, *i.e.,* that the defendant has committed any act in Texas, the defendant can satisfy its burden by presenting evidence that it is a nonresident. *See Hotel Partners,* 847 S.W.2d at 634.

Whether the court has personal jurisdiction over a nonresident defendant is a question of law, but the proper exercise of such jurisdiction is sometimes preceded by the resolution of underlying factual disputes. *See Conner v. ContiCarriers & Terminals, Inc.,* 944 S.W.2d 405, 411 (Tex.App.—Houston [14th Dist.] 1997, no writ). The standard of review for determining the appropriateness of the resolution of those facts is the factual sufficiency of the evidence review. *See id.* (citing *Hotel Partners,* 847 S.W.2d at 632). The reviewing court considers all the evidence in the record. *See id.* If the special appearance is based upon un-

---

1. "A special appearance may be made as to an entire proceeding ... by sworn motion filed prior to ... any other plea, pleading or motion; provided however, that ... any other ... motion may be ... filed subsequent [to the special appearance] without waiver of such special appearance." Tex.R. Civ. P. 120a(1).

2. The trial court's conclusion that EAA waived its special appearance apparently was based on the court's finding that the motion for continuance was not filed "subject to" the special appearance. In *Dawson–Austin,* however, the supreme court held that no such language is required to avoid waiver of a special appearance. 968 S.W.2d at 323.

disputed and established facts, the reviewing court shall conduct a de novo review of the trial court's order either granting or denying a special appearance. *See id.*

 The appeals court may not disregard findings of fact if the record contains some evidence from which inferences may be drawn, unless the findings are so contrary to the overwhelming weight of the evidence as to be manifestly wrong. *See Conner,* 944 S.W.2d at 411; *Hotel Partners,* 847 S.W.2d at 632. Additionally, if the evidence supports an implied finding of fact, this court must uphold the district court's judgment on any theory supported by the evidence. *See Fish v. Tandy Corp.,* 948 S.W.2d 886, 892 (Tex.App.—Fort Worth 1997, writ denied); *Angelou v. African Overseas Union,* 33 S.W.3d 269, 277 (Tex.App.—Houston [14th Dist.] 2000, no pet.).

Here, the trial court made findings of fact that EAA challenges. Therefore, we will analyze the trial court's findings to determine if some evidence of probative value supports them.

### Texas Long–Arm Statute

 A Texas court may exercise jurisdiction over a nonresident if two conditions are satisfied: (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional guarantees of due process. *See Schlo-*

bohm v. Schapiro, 784 S.W.2d 355, 356 (Tex.1990).

 The Texas long-arm statute authorizes the exercise of jurisdiction over a nonresident defendant who does business in Texas. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.042; *Schlobohm,* 784 S.W.2d at 357.[3] The broad language of the statute's "doing business" requirement permits the statute to reach as far as the federal constitutional requirements of due process will allow. *Guardian Royal Exchange Assur., Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991). Therefore, we need only consider whether the assertion of personal jurisdiction over EAA is consistent with the requirements of due process. *See id.; Reyes v. Marine Drilling Cos.,* 944 S.W.2d 401, 404 (Tex.App.—Houston [14th Dist.] 1997, no writ).

### Due Process

 Due process in the context of personal jurisdiction has two components: (1) whether the nonresident defendant has purposefully established "minimum contacts" with the forum state, and (2) if so, whether the exercise of jurisdiction comports with "fair play and substantial justice." *See Guardian Royal,* 815 S.W.2d at 226 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985)).

 Under the minimum contacts analysis, we must determine whether the nonresident defendant has purposefully availed itself of the privilege of conducting

---

**3.** Specifically, the Texas long-arm statute provides as follows:

In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

(2) commits a tort in whole or in part in this state; or

(3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

TEX. CIV. PRAC. & REM.CODE ANN. § 17.042.

activities within the forum state, thus invoking the benefits and protections of the state's laws. *See Reyes,* 944 S.W.2d at 404 (citing *Burger King,* 471 U.S. at 474–75). A nonresident defendant that purposefully avails itself of the privileges and benefits of conducting business in the forum state has sufficient contacts with the forum to confer personal jurisdiction on the court. *See CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996) (orig. proceeding). The purposeful availment requirement insures that the nonresident defendant's contact results from its own purposeful activity and not the unilateral activity of the plaintiff or a third party. *See Guardian Royal,* 815 S.W.2d at 227.

In determining whether a nonresident defendant has purposefully established minimum contacts with the forum state, "foreseeability" is a significant consideration. *See id.* Although not an independent component of the minimum contacts analysis, foreseeability is implicit in determining whether there is a "substantial connection" between the defendant and the forum state. *Id.* If a nonresident, by its actions or conduct, purposefully avails itself of the state's benefits and the protection of a state's laws, then it has established a substantial connection with the state and subjected itself to the state's jurisdiction. *See Conner,* 944 S.W.2d at 410 (citing *Guardian Royal,* 815 S.W.2d at 226–27).

The nonresident defendant's contacts can give rise to two types of jurisdiction, specific and general. *Specific jurisdiction* is established when the plaintiff's cause of action arises out of or relates to the defendant's contacts with the forum state. *See id.* The defendant's activities must have been purposefully directed toward the forum state. *See Guardian Royal,* 815 S.W.2d at 228. Under specific jurisdiction, the minimum contact analysis

focuses on the relationship among the defendant, the forum, and the litigation. *See id. General jurisdiction* is based on the defendant's continuous and systematic contacts with the forum. Such contacts permit the forum to exercise personal jurisdiction over the defendant even if the cause of action did not arise from, or relate to, the defendant's activities conducted within the forum state. *See CSR Ltd.,* 925 S.W.2d at 595. In reviewing an allegation of general jurisdiction, the minimum contacts analysis is more demanding, requiring a showing of substantial activities within the forum state. *See Schlobohm,* 784 S.W.2d at 357.

## Specific Jurisdiction

In its third point of error, EAA contends the trial court erred in finding that EAA is subject to specific jurisdiction in Texas. To establish specific jurisdiction, the cause of action must arise out of or relate to the nonresident defendant's contact with the forum state. *Guardian Royal,* 815 S.W.2d at 226. The accident giving rise to this lawsuit occurred during AirVenture '99 on a runway in Wisconsin. The air show was put on by EAA's employees and volunteers. The trial court found that Pardue, EAA's co-defendant and a Texas resident, "was part of the aviation demonstration for EAA" and that EAA "paid his expenses incurred in connection with the performance." The court thus concluded that "the acts of EAA directed to the State of Texas give rise, at least in part, to this lawsuit." The Doctors argue this finding establishes an employment contract in support of specific jurisdiction, as recruitment for employment purposes outside this state, pursuant to the long-arm statute. However, there is no evidence that EAA reimbursed Pardue for any expense except the fuel utilized during the show itself. EAA argues that

mere reimbursement for fuel expenses is not enough to support a claim of employment. Under these facts, Pardue is a volunteer[4] and may not be considered an employee so as to satisfy the long-arm statute for specific jurisdictional purposes. Because the accident in question occurred outside the state of Texas and the relationship between EAA and Pardue does not rise to the level of an employment contract, no evidence supports the trial court's finding of specific jurisdiction. EAA's point of error as to specific jurisdiction is sustained.

### General Jurisdiction

■■■ The trial court also found that Texas may assert its judicial power over EAA under general jurisdiction. To establish general jurisdiction there must be a showing of "continuous and systematic" contacts between EAA and the State of Texas. *See CSR Ltd.,* 925 S.W.2d at 595. EAA argues that as to it, each individual contact and act, standing alone, would not amount to a finding of general jurisdiction over EAA. However, in order to make a reasonable determination as to "minimum contacts," no case is "susceptible of mechanical application; rather, the facts of each case must be weighed." *Kulko v. California Superior Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978). In applying the jurisdictional formula to a particular case, the facts must be carefully weighed and mechanical application of any test must be avoided. *Schlobohm,* 784 S.W.2d at 358; *see Burger King,* 471 U.S. at 477–78, 105 S.Ct. at 2185. Texas courts should strive to utilize a realistic approach when applying the jurisdictional formula. *See Burger King,* 471 U.S. at 478–79, 105 S.Ct. at 2185; *Guardian Royal,* 815

S.W.2d at 231. "The seductive appeal of rigid stratification must yield to a frank appraisal of the realities surrounding any given relationship." *Donatelli v. National Hockey League,* 893 F.2d 459, 468 (1st Cir.1990).

■■■ The trial court concluded that EAA has purposely established continuous and systematic contacts with Texas "through its membership, marketing, contracting, employment, service provision, etc. activities that are directed at Texas residents." We focus on the first three of these categories of contacts considered by the trial court: membership, marketing, and contracting.

### *Membership*

■■■ In support of general jurisdiction, the trial court found that approximately 9,000 Texas residents have become EAA members after being solicited by EAA. EAA does not challenge this finding of fact. A membership agreement with an association is a contract. *See Dickey v. Club Corp. of Am.,* 12 S.W.3d 172, 177–78 (Tex.App.—Dallas 2000, pet. denied) (recognizing a disagreement between a member and an association is merely a claim for breach of contract). EAA thus has contractual agreements with nearly 9,000 separate Texas residents.

EAA argues that in its worldwide organization, Texas memberships make up less than five percent of EAA's total membership and therefore cannot give rise to general jurisdiction. In support of this proposition, EAA cites a lower-court decision from Pennsylvania. This case is easily distinguishable. In *Skinner v. Flymo,* 351 Pa.Super. 234, 505 A.2d 616 (1986), the court concluded that Pennsylvania did not

---

4. A volunteer is defined as "a person rendering services for or on behalf of a charitable organization who does not receive compensa-

tion in excess of reimbursement for expenses incurred." TEX. CIV. PRAC. & REM.CODE ANN. § 84.003(2) (Vernon Supp.2002).

have jurisdiction over a nonprofit trade association with only one member in the state. The court in *Skinner* noted that the association's single Pennsylvania member constituted less than two percent of total membership, that the association received less than $8,000 in dues income from this lone resident member and that the association's revenue from the sale of publications in the state totaled less than $650 over a two-year period. *Id.* at 624–25. Here, the record shows that EAA has nearly 9,000 Texas members. Based on EAA's Statements of Activities, in 1999 alone, EAA received approximately $350,000 in membership dues and subscriptions from its members in Texas.[5] Such contacts are sufficient to justify a determination of continuous and systematic contacts. *See Design Info. Sys. v. Feith Sys. & Software, Inc.*, 801 S.W.2d 569, 571 (Tex.App.—Fort Worth 1990) (finding that repeated sales transactions with twenty-five Texas customers constitute "continuing and systematic contacts" in Texas), *aff'd in part, rev'd in part on other grounds*, 813 S.W.2d 481 (Tex.1991). *Cf. American Type Culture Collection, Inc. v. Coleman*, 26 S.W.3d 37, 41–42 (Tex.App.—Houston [1st Dist.] 2000, pet. granted) (recognizing that, even though an organization's sales in Texas constituted only five percent of nationwide sales, the trial court could rely on those sales as a factor in establishing general jurisdiction).

We conclude the trial court did not err in concluding that EAA's contacts with approximately 9,000 EAA members in Texas constitute continuous and systematic contacts with the state of Texas.

*Marketing*

The trial court concluded that EAA is doing business in Texas "through its marketing efforts in the State of Texas." In its findings of fact, the court found that EAA markets itself in Texas in several ways, including through (1) a website that markets EAA's products to both members and Texas citizens at large; (2) an aviation event held in Texas, known as the Southwest Regional Fly–In; and (3) vendors who market EAA merchandise in Texas.

In their brief, the Doctors primarily focus on EAA's website, which the Doctors contend establishes "a constant presence in Texas cyberspace." As the Supreme Court has recognized, "[i]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a state in which business is conducted." *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184. It is therefore constitutionally permissible to exercise personal jurisdiction over one who conducts activity over the Internet in a commercial nature and quality. *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa. 1997). The nature and quality of these Internet contacts are evaluated on a "sliding scale." *Id.* At one end of the spectrum, jurisdiction exists where one clearly does business over the Internet by entering into contracts and through the repeated transmission of computer files. *Id.; see CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265–66 (6th Cir.1996). At the other end, personal jurisdiction would not be appropriate where one "passively" posts

---

**5.** Each EAA member is required to submit an application and pay the membership fee, which entitles each member to numerous specified benefits. Benefits range from a national magazine subscription to insurance programs, a Visa credit card, travel services, and lower prices on various commercial items such as new cars. At least some of these membership benefits are undeniably delivered to Texas.

information on the Internet. *Zippo,* 952 F.Supp. at 1124; *see Weber v. Jolly Hotels,* 977 F.Supp. 327, 334 (D.N.J.1997). Courts evaluate the "middle ground" contacts based on the level of interactivity and the commercial nature of the exchange of information. *Zippo,* 952 F.Supp. at 1124. Texas courts have applied this "sliding scale" in the same or similar fashion in determining whether Internet activity permits personal jurisdiction. *See Mink v. AAAA Dev. LLC,* 190 F.3d 333, 336 (5th Cir.1999) (citing *Zippo,* 952 F.Supp. at 1124); *see also W. Gessmann, GmbH v. Stephens,* 51 S.W.3d 329, 339 (Tex.App.— Tyler 2001, no pet.); *Daimler–Benz Aktiengesellschaft v. Olson,* 21 S.W.3d 707, 725 (Tex.App.—Austin 2000, pet. dism'd w.o.j.); *Jones v. Beech Aircraft,* 995 S.W.2d 767, 772 (Tex.App.—San Antonio 1999, pet. dism'd w.o.j.).

In this case, EAA operates an interactive website. The EAA site contains search capabilities and has an interactive online shop with e-mail purchasing capability. It also contains hyperlinks for information about events such as AirVenture Oshkosh and the Southwest Regional Fly–In, as well as for Texas chapters of EAA. The website encourages people to become members online and receive a personal identification number allowing them to access a members-only section. The website heavily promotes EAA's membership benefits, including insurance plans and discounted prices on travel. Ellen Krueger, EAA's web editor, acknowledged that in 1998 anyone could buy a membership or merchandise through the EAA website. Further, a Texas resident could sign up for an EAA membership or purchase EAA products online. Given the "level of interactivity and commercial nature of the exchange of information" on EAA's website, we consider it a significant factor in support of personal jurisdiction. *See Zippo,* 952 F.Supp. at 1124.

EAA's other marketing efforts in Texas also support a finding of jurisdiction. EAA's President, Tom Poberezny, admitted in his deposition that EAA has in the past used the Southwest Regional Fly–In, an aviation event held annually in the state of Texas, to sell EAA products and solicit memberships. Although Poberezny attempted to downplay EAA's role in such marketing efforts, the Regional Fly–In Agreement between EAA and the Experimental Aircraft Association Southwest Regional Fly–In, Inc. ("Southwest RFI"), a Texas corporation, expressly provides that Southwest RFI "shall provide services that will be of benefit to the EAA Entities and their membership." Among the services Southwest RFI is required to provide, if requested by EAA, are "the sale of EAA memberships [and] the sale of EAA merchandise."

Furthermore, in an affidavit, EAA's Vice President of Chapter Relations, Robert Mackey, concedes that there are "EAA vendors" who sell merchandise to EAA's local chapters, for which EAA receives royalty payments. This presumably includes the approximately fifty local chapters in the state of Texas.

We conclude that EAA's marketing efforts in Texas, including its interactive website, the Southwest Regional Fly–In, and the efforts of "EAA vendors," support the trial court's conclusion that EAA has continuous and systematic contacts with the state.

*Contracts with Texas Residents*

█ In addition to EAA's contracts with each of EAA's approximately 9,000 members in Texas, the trial court also concluded that EAA is doing business in Texas because, among other things, it entered into a contract with a Texas resident, Southwest RFI, to be performed in whole or in part in Texas. As EAA notes in its

brief, contracting with a Texas resident is by itself insufficient to subject a nonresident defendant to jurisdiction in Texas. *Colwell Realty Invs., Inc. v. Triple T Inns of Ariz., Inc.*, 785 F.2d 1330, 1334 (5th Cir.1986). Rather, the court should examine the contract and examine the factors of "prior negotiations, *contemplated* future consequences, terms of the contract, and the parties' actual course of dealing to determine whether [the nonresident defendant] *purposefully* established minimum contacts with the forum." *Id.* (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir.1985)). Under this analysis, EAA's contract with Southwest RFI clearly supports the trial court's finding of sufficient contacts with Texas.[6] In 1989, EAA and a related entity, EAA Aviation Foundation, Inc., entered into a Regional Fly–In Agreement with Southwest RFI relating to an annual aviation event to be held in Texas. Thus, a substantial portion of the contract was to be performed in Texas. The agreement expressly provides that Southwest RFI "shall assist and promote the EAA organization." As noted above, the agreement further provides that Southwest RFI shall provide services for EAA's benefit, including the sale of EAA memberships and merchandise. Under the agreement's terms, there is no doubt that EAA purposefully sought to establish contacts with the state of Texas.

### Fair Play and Substantial Justice

■ Courts recognize that "the touchstone of jurisdiction ... is ... whether the defendant has at least minimum contacts with the forum such that the acceptance of jurisdiction does not offend traditional notions of fair play and substantial justice." *Texas Prop. & Cas. Ins.*

*Guar. Ass'n v. Boy Scouts of Am.*, 947 S.W.2d 682, 687 (Tex.App.—Austin 1997, no writ). Once it has been determined that the nonresident defendant purposefully established minimum contacts with the forum state, the contacts are evaluated in light of other factors to determine whether the assertion of personal jurisdiction comports with fair play and substantial justice. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113–15, 107 S.Ct. 1026, 1033–34, 94 L.Ed.2d 92 (1987); *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184. These factors include (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184; *see also Guardian Royal*, 815 S.W.2d at 228.

■ In this case, EAA has not demonstrated that it would be put to a substantial burden in order to defend itself in this forum. In fact, EAA has over fifty chapters in the state of Texas, and the record indicates that in 1998 alone, no fewer than thirteen individuals traveled on behalf of EAA to at least twenty-two different Texas cities. Texas plainly has an interest in

---

**6.** We need not decide whether this contract *alone* would be sufficient to support a finding of personal jurisdiction. The trial court properly considered this contract in combination with EAA's other contacts with the state in concluding that EAA had established continuous and systematic contacts with Texas.

adjudicating this dispute as two of the three named parties, one a plaintiff and one a defendant, are Texas residents. *See Memorial Hosp. Sys. v. Fisher Ins.*, 835 S.W.2d 645, 651–52 (Tex.App.—Houston [14th Dist.] 1992, no pet.) ("The State of Texas has a strong interest in ... providing a forum in which disputes involving its citizens can be resolved."). In addition, the list of persons having knowledge of relevant facts of this case span the country, including residents of Alabama, California, Florida, Illinois, Indiana, Kansas, New Mexico, New York, Texas, and Wisconsin. In the absence of evidence showing that another state's social policy interest is greater than that of Texas, this factor weighs in favor of Texas exercising jurisdiction over EAA. *See General Refractories Co. v. Martin*, 8 S.W.3d 818, 823–24 (Tex.App.—Beaumont 2000, pet. denied). Accordingly, Texas has a greater, or at least equal, interest with that of all other states in adjudicating this claim. *See Coleman*, 26 S.W.3d at 52. We conclude that the exercise of personal jurisdiction over EAA does not offend traditional notions of fair play and substantial justice.

Based on the foregoing, we find the trial court did not err in concluding that EAA has purposefully established sufficient contacts with Texas and that the exercise of jurisdiction over EAA comports with fair play and substantial justice. Accordingly, EAA's points of error challenging the trial court's finding of personal jurisdiction based on general jurisdiction are overruled.

### Objections to Special Appearance Responses

 EAA also argues that the trial court erred in overruling its objections to the Doctors' responses to the special appearance. However, EAA asserts no authority in support of its contention. *See*

Tex.R. App. P. 38.1.; *see also Novosad v. Cunningham*, 38 S.W.3d 767, 771 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (holding that when a party cites no authority in support of its point of error that issue is waived). Accordingly, this point of error is waived.

We affirm the trial court's order.