Reversed and Remanded and Opinion filed May 29, 2003









Reversed and Remanded and Opinion filed May 29, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-02-00626-CV

____________

 

WALKER INSURANCE SERVICES,
Appellant

 

V.

 

BOTTLE ROCK POWER CORPORATION,
Appellee

 



 

On
Appeal from the 133rd District Court

Harris County, Texas

Trial
Court Cause No. 02-01009

 



 

O
P I N I O N

Appellant
Walker Insurance Services challenges the trial court=s
order granting appellee Bottle Rock Power Corporation=s
special appearance.  In two points of
error, appellant contends  that the trial
court erred because the evidence was legally and factually insufficient to
support the trial court=s order.  We reverse and
remand.

I.  FACTUAL BACKGROUND








Bottle
Rock, a California corporation, entered into an agreement with the California
Department of Water Resources for the purchase of the Bottle Rock power
plant.  The contract contained a number
of conditions, including acquisition of a $5 million decommissioning and
reclamation bond, a prerequisite to the purchase.  Throughout the summer of 2001, Bottle Rock
sought the services of several bond companies.

Appellant,
a Texas-based independent insurance examiner, became involved in the
transaction when its Houston agent, James Walker, met Arlie Beane, also a Texas
resident.  Walker learned through Beane
that Bottle Rock was seeking the bond and agreed to assist in its
acquisition.  At the special appearance
hearing, Walker testified that his understanding of the arrangement was to:

Get it done B get it done no matter what you have to do as far as get B
helping us to get this bond in place because we=re under a tight, very tight time constraint; we need to have
this in place to finalize the deal or the deal may not be there to
finalize.  So, whatever you can do, just
get it done.

Further,
Walker testified that Bottle Rock, through Beane, offered him a hundred
thousand dollar incentive fee to acquire the bond under specific time
constraints.  This alleged oral agreement
forms the basis of appellant=s lawsuit.

To
acquire the bond, Walker approached appellant=s broker in Boston, Associated Insurance Agency, Inc.  Walker=s contact at Associated for this transaction was Terry
Smith.  Walker also contacted James
Hagan, Bottle Rock=s California attorney. 
Hagan had incorporated the Bottle Rock Power Corporation and represented
Bottle Rock in its agreement with the Department of Water Resources.  At the special appearance hearing, Hagan
recalled his first interaction with Walker as follows:

I believe Mr. Walker and I talked by telephone sometime in
July, I think.  I think Mr. Walker called
me one day and asked me some questions about Bottle Rock Power Corporation
because he said he had been approached and B about the bond.  And I
gave him the information that he had requested with respect to the Bottle Rock
Power Corporation.








Hagan
stated he began to work with Smith on or about August 20, 2001.  According to Hagan, he worked primarily with
Smith at Associated and also addressed with him Aall the important aspects of the bond.@
 When asked how he first came to work
with Smith, Hagan recalled that he had been Adirected to call@ Smith, and Hagan also recalled Asome telephone conversation[s] with Mr. Walker prior to the
time [he] spoke with Mr. Smith.@ When specifically asked who referred him to Smith, Hagan
stated:

I=m trying to remember that. It was B
I can=t
remember it clearly.  It would have been
one of three people.  It would have been
either B
Mr. Walker might have called me and told me to contact Mr. Smith B           

Hagan also
admitted that it could have been Beane.

Associated
required that the $125,000 bond premium be deposited in its bank account or
otherwise under its control before issuance of the bond.  The contract with the Department of Water
Resources was to be executed on August 21, but Bottle Rock missed that deadline
because the bond was not yet in place. 
The next day, to expedite the bond=s release, Hagan deposited a certified check for the premium in
Walker=s
bank account.[1]  As soon as Smith and Walker received
confirmation of the deposit, Smith sent the Department a letter stating that
the bond had been issued.  In all, Walker
estimated he spent eight to ten weeks negotiating and preparing the transaction
before it came to fruition in August of that year. 








Walker
and Hagan gave conflicting testimony as to Beane=s role in the transaction. 
Walker testified he had never previously met Beane, nor had he known or
heard of Bottle Rock prior to the bond transaction at issue and stated that his
contact at all relevant times had been Beane, whom he referred to as the Apoint
man.@  Although Walker testified that he
communicated with Hagan,
Ronald Suess (the president and a director of Bottle Rock), and Jimmy Wynmiller (a director of Bottle Rock), he stated
that Aby
far@
he had worked with Beane most of the time. 
In his affidavit attached to APlaintiff=s Response to Defendant=s Special Appearance,@ Walker stated that Beane had Aspent two full days@ in his office Awhile we worked to get the bond needed by Bottle Rock, and Mr.
Beane called me very frequently in working on behalf of Bottle Rock.@

According
to Hagan, however, Beane was not and had never been an agent of Bottle
Rock.  When asked who had first
approached Walker about the bond, Hagan testified he thought it had been
Beane.  However, Hagan also testified
that no one had ever called him to inquire as to Beane=s
authority and that he was unaware of any representations made by Beane with
respect to the alleged $100,000 fee. 
Hagan stated that the first he heard of such a fee was thirty to sixty
days after the issuance of the bond when he received a call from Walker.  When the fee was not paid, Walker instituted
the underlying suit. 

Bottle
Rock filed a special appearance, which the trial court granted on June 10,
2002.

II.  DISCUSSION

A.  Personal Jurisdiction over Nonresident
Defendants








Texas
courts may exercise jurisdiction over a nonresident if two conditions are
satisfied:  (1) the Texas long‑arm
statute authorizes the exercise of personal jurisdiction; and (2) the exercise
of jurisdiction is consistent with federal and state constitutional guarantees
of due process.  See Schlobohm v.
Schapiro, 784 S.W.2d 355, 356 (Tex. 1990). 
The Texas long‑arm statute authorizes the exercise of jurisdiction
over a nonresident defendant who does business in Texas.  See Tex.
Civ. Prac. & Rem. Code ' 17.042 (Vernon 1997);[2]
CRS Ltd. v. Link, 925 S.W2d 591, 594 (Tex. 1996).  The Texas Supreme Court has interpreted the
broad language of the Texas long arm statute to extend Texas courts=
personal jurisdiction Aas far as the federal constitutional requirements of due
process will permit.@  BMC Software
Belgium, N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex. 2002) (citing U-Anchor
Adver., Inc. v. Burt, 553 S.W.2d 760, 762 (Tex. 1977) (noting that Athe
reach of [the Texas long arm statute] is limited only by the United States
Constitution@).  As a result, we
consider only whether it is consistent with federal constitutional requirements
of due process for Texas courts to assert in personam jurisdiction over Bottle
Rock.  Guardian Royal Exch. Assurance
Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991).

Federal
constitutional requirements of due process limit the state=s
power to assert personal jurisdiction over nonresident defendants.  Id. 
Personal jurisdiction over nonresident defendants is constitutional when
two conditions are met: (1) the defendant has established minimum contacts with
the forum state; and (2) the exercise of jurisdiction comports with traditional
notions of fair play and substantial justice. 
Marchand, 83 S.W.3d at 795 (citing Int=l
Shoe Co. v. Washington, 326 U.S.
310, 316 (1945)).  A defendant=s
minimum contacts give rise to either specific jurisdiction or general
jurisdiction.  In this case, only
specific jurisdiction is alleged.[3]  Id.; see also
Schlobohm, 784 S.W.2d at 358.  








Recently, this court observed A[s]pecific jurisdiction is
established when the plaintiff=s cause of action arises out of or relates to the defendant=s contacts with the forum state.  The defendant=s activities must have been
purposefully directed toward the forum state.@ Experimental
Aircraft Ass=n v. Doctor, 76
S.W.3d 496, 504 (Tex.
App.CHouston [14th Dist.] 2002, no pet.) (citations omitted).  When
specific jurisdiction is asserted, the minimum contacts analysis focuses on the
relationship among the defendant, the forum, and the litigation.  See Guardian Royal, 815 S.W.2d at
228.  We must determine whether the
nonresident defendant has Apurposefully avail[ed] itself of the privilege of conducting
activities within the forum State,@ invoking the benefits and
protections of the state=s laws.  See Hanson
v. Denckla, 357 U.S. 235, 253 (1958); Reyes v. Marine Drilling
Cos., 944 S.W.2d 401, 404 (Tex. App.CHouston [14th Dist.] 1997, no writ) (citing Burger King Corp. v. Rudzewicz,
471 U.S. 462, 474B75 (1985)).  A
nonresident defendant that purposefully avails itself of the privileges and
benefits of conducting business in the forum state has sufficient contacts with
the forum to confer personal jurisdiction on the court.  Doctor, 76
S.W.3d at 504.  The purposeful availment
requirement insures that the nonresident defendant=s
contacts result from its own purposeful activity and not the unilateral
activity of the plaintiff or a third party. 
Id.  Although not
determinative, foreseeability is an important consideration in deciding whether
the nonresident defendant has purposefully established Aminimum
contacts@
with the forum state.  Marchand,
83 S.W.3d at 795.

An
exercise of jurisdiction must also comport with traditional notions of fair
play and substantial justice.  Id.  In this inquiry, it is incumbent upon the
defendant to present Aa compelling case that the presence of some other
considerations would render jurisdiction unreasonable.@  Burger King Corp., 471 U.S. at
477.  The following factors, when
appropriate, should be considered: (1) the burden on the defendant; (2) the
interests of the forum state in adjudicating the dispute (including the state=s
special regulatory interest in areas such as insurance); (3) the plaintiff=s
interest in obtaining convenient and effective relief; (4) the interstate
judicial system=s interest in obtaining the most efficient resolution of
controversies; and (5) the shared interest of the several states in furthering
fundamental substantive social policies. 
Guardian Royal, 815 S.W.2d at 231.

B.  Standard of Review








The
plaintiff has the initial burden of pleading sufficient allegations to bring
the nonresident defendant within the provisions of the Texas long-arm statute.  See Hotel Partners v. KPMG Peat Marwick,
847 S.W.2d 630, 633 (Tex.
App.CDallas,
1993, writ denied).  At the special
appearance hearing, the burden shifts to the nonresident defendant to negate
all bases of personal jurisdiction.  Nat=l
Indus. Sand Ass=n v. Gibson, 897
S.W.2d 769, 772 (Tex. 1995).  This
standard does not mean that the nonresident defendant must negate every
possible ground in the universe, but rather the acts in Texas alleged by the
appellant to support personal jurisdiction. 
Scott v. Huey L. Cheramie, Inc., 833 S.W.2d 240, 241 (Tex. App.CHouston
[14th Dist.] 1992, no pet.).  On appeal,
an appellate court reviews all evidence in the record to determine if the
nonresident defendant negated all grounds for personal jurisdiction.  Abacan Tech. Servs. Ltd. v. Global Marine
Int=l Servs. Corp.,
994 S.W.2d 839, 843 (Tex. App.CHouston [1st Dist.] 1999, no pet.).  

Whether
a court has personal jurisdiction over a defendant is a question of law.  Am. Type Culture Collection, Inc. v.
Coleman, 83 S.W.3d 801, 805B06 (Tex. 2002); Marchand, 83 S.W.3d.at 794.  The trial court=s decision to grant or deny a special appearance is subject to de
novo review on appeal, but when a factual dispute exists, as it does here,
an appellate court is called upon to review the trial court=s
resolution of the factual dispute.  Coleman,
83 S.W.3d at 806; Marchand, 83 S.W.3d at 794; M.G.M. Grand Hotel,
Inc. v. Castro, 8 S.W.3d 403, 408 (Tex. App.CCorpus Christi 1999, no pet.) 
When the trial court does not issue findings of fact, a reviewing court
should presume that the trial court resolved all factual disputes in favor of
its judgment.  Coleman, 83 S.W.3d
at 806.  However, when the appellate
record includes both the reporter=s and clerk=s records, these implied findings are not conclusive and may be
challenged for legal and factual sufficiency.  Marchand, 83 S.W.3d at 793.  








In
reviewing a legal sufficiency challenge, the no evidence challenge fails if
there is more than a scintilla of evidence to support the finding.  Marchand, 83 S.W.3d at 795.  More than a scintilla of evidence exists when
the evidence rises to a level that would enable reasonable and fair-minded
people to differ in their conclusions.  Merrell
Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997).  In reviewing a factual sufficiency challenge,
we set aside the trial court=s decision only if its ruling is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and manifestly
unjust.  In re King=s
Estate, 244 S.W.2d 660, 661 (Tex.
1951); Cartlidge, 9 S.W.3d at 346. 
Also, in reviewing a factual sufficiency challenge, we must consider and
weigh evidence that tends to prove the existence of a vital fact, as well as
evidence that disproves its existence.  Fish
v. Tandy Corp., 948 S.W.2d 886, 892 (Tex. App.CFort
Worth 1997, writ denied).  

III.  IS ARLIE
BEANE BOTTLE ROCK=S AGENT?

Appellant
argues the trial court erred in granting Bottle Rock=s
special appearance because the evidence is factually and legally insufficient
to support such a finding.  In so doing,
appellant contends the evidence sufficiently established that Bottle Rock
formed a contract, or committed a tort, because Beane was Bottle Rock=s
agent in Texas.  Therefore,  the crux of this jurisdictional inquiry is
whether Arlie Beane was an agent of Bottle Rock, and if so, whether his
contacts with Texas are sufficient to confer the jurisdiction of our courts
over Bottle Rock.  Implied in the trial
court=s
judgment is the finding that there was no agency relationship between Beane and
Bottle Rock.  However, when determining
whether an agency relationship existed between Bottle Rock and Beane, we must
be mindful that the issue of ultimate liability is separate from the issue of
jurisdiction.  Arterbury v. Am. Bank
& Trust Co., 553 S.W.2d 943, 948 (Tex. Civ. App.CTexarkana 1977, no writ). 
Surveying all the evidence, we conclude that the evidence is legally and
factually insufficient  to support the
trial court=s implied finding, and thus, we find that Bottle Rock is
subject to specific jurisdiction in Texas.

A.  Principles of Agency








An
agent is one who consents to the control of another, the principal, who has
manifested consent that the agent shall so act. 
Royal Mortgage Corp. v. Montague, 41 S.W.3d 721, 732 (Tex. App.CFort Worth 2001, no pet.).  An
agency relationship does not depend upon the express appointment or assent by
the principal; rather, it may be implied from the conduct of the parties.  Id. 
In a recent special appearance case in which an agency relationship was
at issue, the Texarkana Court of Appeals set forth the governing rules in such
an inquiry:

We
cannot presume an agency relationship exists. 
An agency relationship may be found from underlying facts or direct and
circumstantial evidence showing the relationship of the parties.  An Aagent@
is one who is authorized by a person or entity to transact business or manage
some affair for the person or entity.  An
essential element of the principal‑agent relationship is the alleged
principal=s right to
control the actions of the alleged agent. This right includes not only the right
to assign tasks, but also the right to dictate the means and details of the
process by which an agent will accomplish the task.  

Townsend
v. Univ. Hosp.BUniv. of Colorado,
83 S.W.3d 913, 921 (Tex.
App.CTexarkana 2002, pet. denied) (citations omitted); see also Happy
Indus. Corp. v. Am. Specialties, Inc., 983 S.W.2d 844, 852 (Tex. App.CCorpus Christi 1998, pet. dism=d w.o.j.).  The principal=s
extent of control over the details of accomplishing the assigned task primarily
distinguishes the status of independent contractor from that of agent.  Happy Indus., 983 S.W.2d at 852. 

Appellant
maintains that Beane, on behalf of Bottle Rock, requested appellant=s
services in soliciting and placing a bond. 
According to appellant, Beane was Bottle Rock=s
agent and his actions in Texas constitute minimum contacts sufficient for the
exercise of  personal jurisdiction.[4]  We agree.

B.  Actual Authority








Actual
authority is created through written or spoken words or conduct of the
principal communicated to the agent.  See
Spring Garden 79U, Inc. v. Stewart Title Co., 874 S.W.2d 945, 948 (Tex. App.CHouston [1st Dist.] 1994, no writ).  The
existence of an agency relationship based on actual authority may be implied
from the conduct of the parties or from the facts and circumstances surrounding
the transaction in question.  See
Johnson v. Holly Farms of Tex., Inc., 731 S.W.2d 641, 645 (Tex. App.CAmarillo 1987, no writ).  Whether
Bottle Rock, the purported principal, gave Beane actual authority to act as its
agent cannot be readily discerned from the record.  

Bottle
Rock insists Beane is not, nor has he ever been, an agent acting on its
behalf.  Bottle Rock casts Beane as a
third party who, presumably, gratuitously put Walker in contact with
Hagan.  In his affidavit, Suess stated:

No person by the name of AArli Beane,@ [sic] or any similar name, is or has
ever been an officer, director, shareholder, or authorized agent of BRPC.  AArlie Beane@ has never had any authority to
conduct business for or make contracts for BRPC.

Echoing
this sentiment, Hagan testified that Bottle Rock did not have any agents or
employees in Texas.  At submission,
however, Bottle Rock characterized Beane as both a Afacilitator,@
and an Ainformation
provider,@ as well as an intermediary between Walker and Bottle Rock=s
officers with respect to the bond=s acquisition. 
Nevertheless, a forum cannot exercise personal jurisdiction over a
nonresident defendant based upon a third party=s unilateral activity.  See Guardian Royal, 815 S.W.2d at 227; see
also Hanson, 357 U.S. at 253 (AThe unilateral activity of those who claim some relationship
with a nonresident defendant cannot satisfy the requirement of contact with the
forum State.@)








To
support his claim of agency, appellant points to the representations by Beane
regarding the acquisition of the bond and incentive fee.  However, it is settled law in Texas that mere
declarations of an alleged agent, standing alone, are incompetent to establish
either the existence of the alleged agency or the scope of the alleged agent=s
authority.  Durand v. Moore, 879
S.W.2d 196, 202B03 (Tex.
App.CHouston [14th Dist.] 1994, no writ).  The
evidence does not directly show that Bottle Rock had the right to assign tasks
to Beane and to control the means and details of the process by which Beane
performed any tasks.  In the record, we
find no contract of employment, no specific description of control over Beane=s
work, and no explanation of the manner in which Beane would have been paid, if
at all.  Thus, we find no evidence of
actual authority upon which an agency relationship between Beane and Bottle
Rock was based.

C.  Apparent Authority

We
note, however, that there is evidence that Beane wielded apparent authority
on behalf of Bottle Rock.  While actual
authority is created by written or spoken words or conduct by the principal to
the agent, apparent authority is created by written or spoken words or conduct
by the principal to a third party.  See
Cameron County Sav. Ass=n v. Stewart Title Guaranty Co., 819 S.W.2d 600, 603 (Tex. App.CCorpus Christi 1991, writ denied).  To establish apparent authority, one must
show that a principal either knowingly permitted an agent to hold himself out
as having authority or showed such lack of ordinary care as to clothe the agent
with indicia of authority.  See
NationsBank v. Dilling, 922 S.W.2d 950, 952B53 (Tex. 1996).  A party
seeking to charge a principal through the apparent authority of an agent must
establish conduct by the principal that would lead a reasonably prudent person
to believe the agent had the authority it purported to exercise.  Id.; see also Disney Enters., Inc.
v. Esprit Fin., Inc., 981 S.W.2d 25, 30 (Tex. App.CSan Antonio 1998,
pet. dism=d w.o.j.).  In
determining whether an agent had apparent authority, a court considers only the
conduct of the principal that would lead a third party to believe the agent had
apparent authority.  Dilling, 922
S.W.2d at 953.








Here, a number
of acts by Bottle Rock, the purported principal, suggest that a reasonably
prudent person would believe Beane possessed the authority to act on Bottle
Rock=s
behalf.  First, Walker testified that one
of Bottle Rock=s directors confirmed his understanding of Beane=s
authority to act and negotiate on its behalf.[5]  Appellant also points to the specific
interactions between Beane and Bottle Rock as evidence of agency.  Walker, summarizing his interactions with
Beane during cross-examination, testified:

My contact person at all
times was Arlie Beane, even down to the request of the Indemnity
Agreement.  I had to go through Arlie
Beane.

At
that point Arlie Beane would either inform Mr. Wynmiller, Mr. Suess, any
parties involved, that they needed to get this signed.  We had conversation[s] with Arlie Beane that
we need[ed] this done.  Arlie Beane was
the point man.  He would either contact
them and tell them we had to have this or he=d contact me or he=d [contact] Associated Insurance.[6]

Walker=s testimony evidences Beane=s role as an intermediary to
facilitate communications between appellant and Bottle Rock.  It
also evidences Bottle Rock=s endorsement of Beane=s efforts.  Indeed,
surveying the evidence in the record, we find that Bottle Rock knew Walker was
dealing with Beane and using Beane as an intermediary and Apoint
man@
in the process of obtaining the bond on their behalf.  Bottle Rock also knew that Walker=s
contacts with it were primarily through Beane. 
During the
majority of the negotiations, Walker communicated with the officers and
directors of Bottle Rock mostly through Beane. 
Walker testified that he had several
telephone conversations with Hagan, Suess, and Wynmiller,
but the great majority of his dealings were with Beane.  At no point did Hagan, Suess, or Wynmiller
tell Walker that Beane did not have the authority to negotiate or contract on
behalf of Bottle Rock.[7]  From all outward appearances, Beane was
acting on behalf of Bottle Rock, and nothing in the record suggests Bottle Rock
discouraged that appearance.








Considering
the foregoing, Bottle Rock=s assertions that Beane was not an agent are not sufficient
to defeat the evidence adduced by appellant.  Undeniably, the evidence established that
Beane was actively involved with acquisition of Bottle Rock=s
bond.  It also established that Bottle
Rock was aware of Beane=s involvement, having acted on and complied with Beane=s
efforts to acquire the bond.  Plainly,
Bottle Rock endorsed Beane=s actions.  Contrary to
this evidence are Bottle Rock=s statements, through Suess and Hagan, that Beane is not Bottle
Rock=s
agent.  However, we cannot say that this
evidence amounts to more than a scintilla. 
The overwhelming weight of the evidence indicates an agency relationship
between Beane and Bottle Rock.  Reviewing
all the evidence, we find there is factually and legally sufficient evidence
supporting a relationship between Bottle Rock as principal and Beane as agent
for purposes of determining jurisdiction.

IV.  DID BOTTLE ROCK RATIFY BEANE=S
AGENCY?








Even if we
assume Beane was not an authorized or apparent agent of Bottle Rock, for the purposes of this analysis,
the evidence shows that Bottle Rock accepted and ratified Beane=s efforts.[8]  A
principal can ratify the acts of an agent and thereby subject himself to the
jurisdiction of a foreign forum.[9]  See Disney Enters., 981 S.W.2d
at 31B32.  Whether or not an agent is initially
authorized to act on behalf of a principal, the agent=s
actions may be attributed to the principal, for purposes of personal
jurisdiction, if the principal later ratifies the agent=s
conduct.  Daynard, 290 F.3d at 55;
Maurice Pierce & Assocs., Inc. v. Computerage, Inc., 608 F. Supp.
173, 177 (N.D. Tex. 1985) (noting that Aratification of the contract may support an assertion of
personal jurisdiction@).  Accordingly, in the limited context of this jurisdictional
inquiry, Bottle Rock cannot now deny Beane=s authority to act on behalf of the
corporation when it has already accepted the benefits of both Walker and Smith=s services, which it acquired as a
direct result of Beane=s efforts.  See Montague, 41
S.W.3d at 735 n.6 (noting in jurisdictional analysis that A[o]ne
cannot accept the benefits of a repudiated agency without assuming the burdens
imposed by the agency@); see also Inn Foods v. Equitable Co-Op Bank, 45 F.3d 594, 598 n.7 (1st Cir.
1995) (noting that Abenefits received are certainly strong evidence that the
principal acquiesced in the agent=s transaction@). 
Throughout Beane and Walker=s discussions, Bottle Rock supported,
accepted, and followed through on the efforts initiated by Beane.  Here the record clearly reveals that once the
contact between Beane and Walker was initiated, Bottle Rock  negotiated with Smith and Walker through
Beane, and eventually consummated an agreement with Associated, appellant=s broker.

Accordingly, we
find Bottle Rock effectively ratified Beane=s efforts on its behalf. 

V.  Due Process

A.  Minimum Contacts








Having
determined that Beane was indeed an apparent agent of Bottle Rock for the
purposes of this jurisdictional inquiry, we next consider whether Bottle Rock,
through its own actions and those of its agent, purposefully established
minimum contacts with Texas.  See
Burger King Corp., 471 U.S. at 474 (noting that Athe
constitutional touchstone remains whether the [nonresident] defendant
purposefully established >minimum contacts= in the forum State.@); see also Grand Entm=t Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 483 (3d Cir. 1993) (stating that A[a]ctivities
of a party=s agent may count toward the minimum contacts necessary to
support jurisdiction@).  Bottle Rock=s
activities must have been Apurposefully directed@ to the forum and the litigation must result from alleged
injuries that Aarise out of or relate to@ those activities.  Burger
King, 471 U.S. at 472. 
Considerations such as the quality, nature, and extent of the activity
in the forum, the foreseeability of consequences within the forum from
activities outside it, and the relationship between the cause of action and the
contacts, relate to whether it can be said that the defendant=s
actions constitute purposeful availment. 
Prejean v. Sonatrach, Inc., 652 F.2d 1260, 1268. (5th Cir. 1981).

Beane, a
resident of Texas and acting on behalf of Bottle Rock, approached Walker about
the acquisition of the bond.  See
Billingsley Parts & Equip., Inc. v. Vose, 881 S.W.2d 165, 169 (Tex. App.CHouston [1st Dist.] 1994, writ denied) (finding specific jurisdiction when, among
other factors, nonresident defendant made initial contact with Texas
company).  They discussed the transaction
on the telephone for several weeks, and ultimately, Beane spent two full days
in Walker=s offices in connection with the acquisition of the bond.  Bottle Rock communicated with Walker through
Beane, and Walker conducted business with Bottle Rock through Beane.  Bottle Rock=s acquisition of the bond arose directly from the efforts of
Walker and Beane, including personal visits by Beane to Walker=s
office, and telephone and facsimile communications to and from Texas.  Thus, Bottle Rock had dealings with
appellant, who it knew to be a Texas resident, and by accepting the benefits of
Beane=s
contacts in Texas, Bottle Rock could reasonably anticipate and foresee being
haled into a Texas court in a dispute arising out of that transaction.[10]  Indeed, Beane=s pre-litigation activities within Texas directly relate to the
causes of action averred by appellant.








Though Beane
was the Apoint
man,@
Walker also had telephone conversations with Bottle Rock=s
out-of-state officers, directors and attorneys. 
He testified that he had several telephone conversations with Suess
and Wynmiller.  On several occasions,
including the time that he volunteered the use of his bank account, Walker
spoke with Hagan on the telephone. 
Bottle Rock=s telephone communications with a Texas resident may be
considered in the minimum contacts jurisdictional analysis.  See Quill Corp. v. North Dakota, 504
U.S. 298, 308 (1992) (A[I]t is an inescapable fact of modern commercial life that a
substantial amount of business is transacted solely by mail and wire
communications across state lines@) (quoting Burger King, 471 U.S. at 476)); Mesalic v.
Fiberfloat Corp., 897 F.2d 696, 701 (3rd Cir. 1990).

At submission,
Bottle Rock reminded this court that appellant=s claim arose from a dispute over the alleged $100,000 finder=s
fee, not from  the acquisition of the
bond itself.  In making this distinction,
Bottle Rock intimated that Bottle Rock might be subject to personal
jurisdiction on a claim over the acquisition of the bond but not from a claim
arising from any alleged service fee premised upon Beane=s
alleged oral representations.  Indeed,
Bottle Rock argues that it had Ano contact with the State of Texas concerning additional monies
to be paid to Appellant.@  At the special
appearance hearing, Hagan testified:

Q.  Now, prior to receiving notice of this
lawsuit, had Bottle Rock been made aware of any representations by Mr. Beane relating
to money to be paid in addition to the bond premium?

A.  Before the bond was issued, the answer to
that question is no. Approximately 30 days or 60 days after the bond was
issued, I received a telephone call from Mr. Walker.  And Mr. Walker then asked me about a matter
of a hundred thousand dollars that he thought he was entitled to receive and
that was the first I=d heard about
it.

Q.  But at no time prior to the issuance of the
bond and you tendering the bond premium were you aware of any representations
that may or may not have been made by Mr. Beane?

A.  About the hundred thousand dollars?

Q.  About any money other than the bond
premium?

A.  That=s correct. Say it, before the bond was issued, I had no idea
there was any money due other than the $125,000.








We find for
purposes of this jurisdictional inquiry, that the acquisition of the bond and
the alleged incentive fee are inextricably intertwined.  An agent is not a party to, nor individually
liable on, a contract he enters into on behalf of his principalCit
is the principal who enters into the contract. 
See Ross F. Meriwether & Assocs., Inc. v. Aulbach, 686 S.W.2d
730, 731 (Tex. App.CSan Antonio 1985, no writ).  If the
issue is merely whether Beane exceeded the scope of his apparent authority by
offering an incentive fee, we impermissibly stray into the liability
question.  If an agent is acting within
the scope of general authority, Ahis wrongful act, though unauthorized, will nevertheless
subject his principal to liability.@  Arterbury, 553
S.W.2d at 949 (emphasis added).  When
reaching a decision to exercise or decline jurisdiction, the trial court should
rely only upon the necessary jurisdictional facts and should not reach the
merits of the case.  Id. at 948. 

                    B.  Traditional Notions of Fair Play &
Substantial Justice

Finally, we
must also determine whether Bottle Rock=s contacts comport with traditional notions of fair play and
substantial justice.  See Guardian
Royal, 815 S.W.2d at 231.  Only in
rare cases, however, will the exercise of jurisdiction not comport with fair
play and substantial justice when the nonresident defendant has purposefully
established minimum contacts with the forum state.  Id. 
In approaching this inquiry, we must be mindful of: (1) the burden on
the defendant; (2) the interests of the forum state in adjudicating the dispute
(including the state=s special regulatory interest in areas such as insurance); (3)
the plaintiff=s interest in obtaining convenient and effective relief; (4)
the interstate judicial system=s interest in obtaining the most efficient resolution of
controversies; and (5) the shared interest of the several states in furthering
fundamental substantive social policies. 
Id.

Despite Bottle
Rock=s
repeated protestations that it has no agents or offices in Texas, nothing in
the record indicates litigating this cause in Texas would be excessively
burdensome.  Moreover, Texas has a strong
interest in resolving disputes over both breaches of contract and torts committed
within its boundaries.  Texas=s
interest in adjudicating the dispute, and appellant=s
interest in obtaining convenient and effective relief weigh in favor of Texas=s
exercising its jurisdiction.  In sum,
considering these factors, as well as the minimum contacts Bottle Rock has with
Texas, we cannot say that subjecting Bottle Rock to the jurisdiction of a Texas
court would offend traditional notions of fair play and due process.








Thus, the
exercise of jurisdiction is consistent with federal and state constitutional
guarantees of due process.

Conclusion

For the
foregoing reasons, we find the trial court erred in granting Bottle Rock=s
special appearance because the evidence was legally and factually insufficient
to support its ruling.  Therefore, we
reverse the judgment and remand the case to the trial court for further
proceedings.

 

 

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered and Opinion filed May 29, 2003.

Panel consists of Justices Anderson, Seymore, and Guzman.

 

 

 











[1]  The
deposit was made at a California branch of Walker=s
bank.  





[2]  Under section
17.042, a nonresident conducts acts constituting business in this state if he:

 

(1) contracts by mail or otherwise with a Texas
resident and either party is to perform the contract in whole or in part in
this state;

(2) commits a tort in whole or in part in this state;
or

(3) recruits Texas residents, directly or through an
intermediary located in this state, for employment inside or outside this
state.

 

Tex. Civ. Prac. &
Rem.Code '
17.042.  Although enumerating particular
acts which constitute Adoing business,@ the
statute also provides that a nonresident=s Aother acts@ may
satisfy that requirement.  Id.





[3]  General
jurisdiction is based on the defendant=s
continuous and systematic contacts with the forum.  Experimental Aircraft Ass=n v. Doctor,
76 S.W.3d 496, 504 (Tex. App.CHouston [14th Dist.] 2002, no pet.).  Such contacts permit the forum to exercise
personal jurisdiction over the defendant even if the cause of action did not
arise from, or relate to, the defendant=s
activities conducted within the forum state. 
Id.  Appellant does not
argue that Bottle Rock is subject to general jurisdiction in Texas, although
Bottle Rock, perhaps attempting to negate all bases of jurisdiction, dedicates
some discussion in its brief to the issue.





[4]  For purposes
of personal jurisdiction, the actions of an agent may be attributed to the
principal.  See Daynard v. Ness, Motley,
Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 55 (1st Cir. 2002).





[5]  During the
special appearance hearing, Walker was asked:

 

Q. Other than Mr. Beane, did you have any knowledge
from anybody else of what his position of authority was with Bottle Rock?@

A:
[Director] Jimmy Wynmiller.





[6]  Bottle Rock
objected to this statement on the grounds that it was nonresponsive.  However, it failed to secure a ruling from
the court on the objection.  Walker also
testified that he had informed Wynmiller and Hagan that Beane had promised him
additional compensation.  





[7]  Far from
contradicting Walker=s testimony about Beane=s
specific interactions and representations, HaganCBottle
Rock=s only live witnessCcould
not account for the nature and extent of Beane=s
activities with respect to the acquisition of the bond. 





[8]  In its brief
and at submission, Bottle Rock contended that ratification is a plea in
avoidance which appellant has waived as it was not affirmatively plead as
required by Texas Rule of Civil Procedure 94. 
See Tex. R. Civ. P. 94 (requiring a party
shall set forth affirmative defenses and matters of avoidance in pleading to a
preceding pleading); see City of Austin v. Castillo, 25 S.W.3d 309, 314
(Tex. App.CAustin 2000, pet. denied) (noting that the theory of
ratification is a matter of avoidance or affirmative defense).  However, this is not a case where a purported
principal has brought an action against a third party over a transaction by an
alleged agent where the third party=s
failure to plead ratification waives an affirmative defense.  Here, the third party has sued the purported
principal, and the issue of ratification is not raised as an affirmative
defense to a preceding pleading but rather as a jurisdictional predicate.  Cf. Tex.
R. Civ. P. 94.





[9]  Most caselaw
interpreting the doctrine of ratification couches its discussion in the context
of an existing agency relationship.  Disney
Enters., 981 S.W.2d at 31.  However,
such a relation is not necessary to cause the ratification to be
effective.  Id.  Moreover, although ratification of the act of
a stranger will not create an agency relationship, it does bind the ratifier to
the specific transaction that is ratified. 
Id.





[10]  Both
appellant=s tort and
contract claims arise from the alleged incentive fee agreement.  Bottle Rock did not dispute the existence of
the incentive fee agreement.  See
Runnells v. Firestone, 746 S.W.2d 845, 851 (Tex. App.CHouston
[14th Dist.]) writ denied, 760 S.W.2d 240 (Tex. 1988) (per curiam) (ATexas
courts have permitted nonresidents to offer proof that no contract existed,
notwithstanding the plaintiff=s
ultimate burden to prove the existence of the contract at the trial on the
merits.@)  Rather, Bottle
Rock argued that as Beane was not its agent it has no contacts within the State
of Texas.