In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-122 CV


____________________



EQUITY TRUST COMPANY AND MID OHIO SECURITIES CORP., Appellants



V.



RAYMOND J. HEBERT, Appellee






On Appeal from the 1st District Court


Jasper County, Texas


Trial Court Cause No. 24959






MEMORANDUM OPINION


 Raymond J. Hebert sued Mid-Ohio Securities Corp. and Equity Trust Company for
statutory fraud, common law fraud, and violations of the Texas Securities Act; he says
appellants were involved in selling him fraudulent securities. He also sued Advanced
Technology Marketing, LLC, and Bee Communications, Inc., but they are not before us
in this interlocutory appeal. Hebert maintains Texas courts have jurisdiction over Mid-Ohio and Equity, because the two companies have done substantial business in Texas by
selling securities to Texas residents and by serving as custodian of self-directed Individual
Retirement Accounts (IRAs) for Texas residents. The trial court overruled appellants'
special appearance motions and appellants filed this interlocutory appeal. See Tex. Civ.
Prac. & Rem. Code Ann. § 51.014(a)(7) (Vernon Supp. 2004). On appeal, Mid-Ohio
and Equity raise three issues challenging the trial court's rulings on appellants' special
appearance motion and motion to dismiss, and the court's finding of facts and conclusions
of law. We address the special appearance issue and the findings of fact and conclusions
of law relating to that issue. (1) 

 Hebert claimed ATM and Bee told him he could use retirement money to purchase
their investments, but to do so he had to roll the money over to a custodian. He
transferred his retirement money to Mid-Ohio in an "Individual Retirement Custodial
Account." Mid-Ohio sold its IRA custodial account business to Equity in April 2003. 
Hebert characterized Mid-Ohio's role as rendering "substantial assistance by providing
investment mechanisms" that allowed ATM and Bee to sell worthless investments through
Mid-Ohio IRAs. 

 A Texas court may exercise personal jurisdiction over a nonresident defendant if
(1) jurisdiction is authorized by the Texas long-arm statute, and (2) the exercise of
jurisdiction is consistent with federal and state due process standards. See Guardian Royal
Exch. Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226-27 (Tex.
1991). The Texas long-arm statute provides as follows: 

 § 17.042. Acts Constituting Business in This State.

 In addition to other acts that may constitute doing business, a
nonresident does business in this state if the nonresident:

 (1) contracts by mail or otherwise with a Texas resident and either
party is to perform the contract in whole or in part in this state;

 (2) commits a tort in whole or in part in this state; or

 (3) recruits Texas residents, directly or through an intermediary
located in this state, for employment inside or outside this state. 


Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 1997). The long-arm statute's
broad language permits a Texas court to exercise jurisdiction as far as the federal
constitution will permit, and the statute is satisfied if the exercise of personal jurisdiction
comports with federal due process. See BMC Software Belgium, N.V. v. Marchand, 83
S.W.3d 789, 795 (Tex. 2002); see also Helicopteros Nacionales de Columbia, S.A. v.
Hall, 466 U.S. 408, 413-14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Due process
requires a showing that the nonresident defendant has purposefully established "minimum
contacts" with Texas and the maintenance of the suit does not offend "traditional notions
of fair play and substantial justice." See International Shoe Co. v. Washington, 326 U.S.
310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Guardian Royal, 815 S.W.2d at 230-31. 

 The minimum contacts analysis begins with the distinction between general and
specific jurisdiction. See Helicopteros, 466 U.S. at 414-16; Guardian Royal, 815 S.W.2d
at 227-28. General jurisdiction is present "when a defendant's contacts in a forum are
continuous and systematic so that the forum may exercise personal jurisdiction over the
defendant even if the cause of action did not arise from or relate to activities conducted
within the forum state." Marchand, 83 S.W.3d at 796. Specific jurisdiction is established
when the defendant's alleged liability arises from or is related to an activity conducted
within the forum. Id. Under specific jurisdiction, the minimum contacts analysis focuses
on the relationship among the defendant, the forum, and the litigation. Guardian Royal,
815 S.W.2d at 228. It is not necessary that a nonresident's conduct actually occurred in
Texas, so long as the defendant's acts were purposefully directed at Texas. CSR Ltd. v.
Link, 925 S.W.2d 591, 595-96 (Tex. 1996). These requirements ensure that it is
reasonable for the nonresident defendant to expect the call of a Texas court. 

 The plaintiff has the initial burden to plead allegations sufficient to bring a
nonresident defendant within the provisions of the long-arm statute. American Type
Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 807 (Tex. 2002). To prevail in a
special appearance, a nonresident defendant bears the burden of negating all bases of
personal jurisdiction alleged by the plaintiff. Id. (citing Kawasaki Steel Corp. v.
Middleton, 699 S.W.2d 199, 203 (Tex. 1985)). A special appearance is determined by
reference to the pleadings, any stipulations made by the parties, any affidavits and
attachments filed by the parties, discovery results, and oral testimony. Tex. R. Civ. P.
120a(3).

 Whether a court has personal jurisdiction over a defendant is a question of law that
we review de novo. Marchand, 83 S.W.3d at 794. However, before deciding the
jurisdiction question, the trial court frequently must resolve fact questions. Id. We review
the findings of fact for legal and factual sufficiency and the conclusions of law de novo. 
See id. If there is more than a scintilla of evidence to support the finding, a legal
sufficiency challenge fails. Id. at 795. As to factual sufficiency points, we examine all
evidence in the record and reverse only if the finding is so against the great weight and
preponderance of the evidence as to be manifestly wrong or unjust. See Shapolsky v.
Brewton, 56 S.W.3d 120, 128 (Tex. App.--Houston [14th Dist.] 2001, pet. denied). 

 Hebert argues Texas courts have jurisdiction over Mid-Ohio and Equity for three
reasons. First, he contends the operation of a statute gives the trial court jurisdiction, and,
in effect, appellants have consented to the jurisdiction of Texas courts. Section 581-16
(now repealed) of the Texas Securities Act required an applicant for a securities dealer
license in Texas to file a written, irrevocable consent to be sued in Texas on actions arising
out of any transaction subject to the Act. (2) Hebert created the IRA rollover account with
Mid-Ohio in 1999 and directed Mid-Ohio as custodian to purchase the investments in early
2000. Mid-Ohio became a licensed broker dealer in Texas in June 2000 after the
transactions had taken place. Hebert contends the existence of the license, along with the
statutory requirement of the filing of a written consent to be sued, subjected appellants to
the trial court's jurisdiction. The record contains no consent to suit form, and appellants
say none is needed for this type of custodial account. 

 Art. 581-16 specifies the suit must be one "growing out of" any transactions that
are subject to the Securities Act. Hebert purchased investments from Bee ("GTS") and
ATM ("Laser Tag"). The mechanism for the purchase was the execution of a "Direction
of Investment" by which Hebert directed Mid-Ohio, the IRA account's custodian, to make
the investment. There is no evidence in the record that appellants were involved in the
solicitation or sale of the investments to Hebert or that the custodial arrangement of these
accounts fits within the Act. The record shows Donald Rozell was Hebert's "financial
adviser,"and Rozell sold the investments to Hebert. Under these facts, it cannot be said
that article 581-16, even if applicable, served to give Texas courts jurisdiction over Mid-Ohio and Equity or that appellants consented to jurisdiction of Texas courts for a lawsuit
that does not "grow" out of a sale of investments by appellants. 

 Second, Hebert argues the trial court has specific jurisdiction over Mid-Ohio and
Equity. Relying on an agency theory, Hebert stated in his affidavit, "I met with a financial
advisor, Mr. Donald Rozell, who suggested that I invest my money into several
investments, including . . . [those purchased from ATM and Bee.]" Hebert explained,
"Rozell had forms for Mid Ohio Securities to roll over my retirement account and even
filled them out for me." Hebert said Rozell identified himself as an agent for Mid-Ohio. 

 Appellants raised a hearsay objection at the special appearance hearing to Hebert's
statement about agency. Plaintiff's attorney replied he was not offering the statement for
the truth of the matter asserted, but merely for the purpose of showing the statement was
made. Given the limited purpose for which it was offered, the statement is not evidence
of agency. 

 Hebert says one "must presume that Mid-Ohio approved" the investments because
of the provisions of the IRA agreement. He points to paragraph 11.2 of the agreement
which provides as follows:

 11.2 No Investment Discretion. You [IRA owner] agree that all
contributions shall be invested according to your sole discretion. All
investments in the IRA shall be in one or more of the following: (1) term
investments of the custodian; (2) marketable securities (excluding securities
issued by custodian or any of its affiliates acquired through a current
underwriting); and any other investment approved by the custodian. We
shall not be responsible or liable for any investment decisions or
recommendations with respect to the investment . . . of assets in the
custodial account. We shall not be responsible for reviewing any assets held
in the custodial account and shall not be responsible for questioning any of
your investment decisions. We shall not be responsible for any loss resulting
from any failure to act because of the absence of directions from you. In the
event we determine your investment instructions are unclear, then we shall
act as soon as practical to obtain clarification of such instructions. Pending
clarification, we shall hold without investing all or any portion of the
contribution, without liability for loss of income or appreciation and without
liability for interest or dividends. 


Paragraph 11.4 provides as follows:


 11.4 No Assumed Responsibilities. We [Mid-Ohio] assume no
responsibilities and agree only to provide the administrative and custodial
services required under IRC section 408 and applicable regulations. We
shall not be obligated or expected to commence or defend any legal action
or proceeding in connection with any investment in the custodial account
unless agreed upon by us and unless we are fully indemnified for doing so
by you to our satisfaction. 


Despite the "approved by the custodian" language, the overarching provision in the IRA
agreement states that "all contributions shall be invested according to [the IRA owner's]
sole discretion." In his "Direction of Investment," Hebert expressly directed Mid-Ohio
as follows:

 Pursuant to [Hebert's] Individual Retirement Custodial Account ("IRA"), the
undersigned Depositor [Hebert] hereby directs Mid-Ohio Securities Corp.
('Custodian') to make the following investment with respect to the assets
held in his or her IRA. [The IRA owner] represents to Custodian that [the
IRA owner] complies with all applicable federal and state securities and
other laws, regulations and requirements with respect to the investment being
directed.

 . . . .

 Generally: Custodian [Mid-Ohio] shall be under no obligation or duty to
secure, verify title to or otherwise evaluate the assets underlying any
investment contemplated herein . . . . 


The document language does not establish agency or Mid-Ohio's approval of the
investments. We will not presume what the record does not demonstrate. The record
shows Rozell, not Relators, made representations about the investments to Hebert and sold
him the investments. There is no evidence Relators made any representations about the
investments to Hebert, that the investments were approved by Relators, or that the
investments fell into approved categories. 

 Hebert contends Mid-Ohio's transfer forms "lent credibility" to the sale of the
investments. Whether or not the forms "lent credibility," it was Rozell, not Mid-Ohio or
Equity, who provided the forms, filled them out for Hebert, and made the sale to Hebert. 
The affidavits submitted by appellants attest that appellants' customers directed these type
IRA investments, appellants did not solicit or manage these customers' investments, and
appellants did not solicit or manage Hebert's IRA. The language of the "Direction of
Investment" form and the IRA custodial agreement supports those claims. 

 Hebert also argues other grounds for specific jurisdiction: appellants' license to sell
securities in Texas; contracts with Texas residents; the acceptance of money from Texas
residents (including Hebert) for initiation and maintenance fees; the "performance" of the
contract in Texas, and the presence of Mid-Ohio's/Equity's custodial business in all fifty
states. Hebert also points to a lease contract between Mid-Ohio as the custodian of
Hebert's IRA and a company called Entertainment Technology and Products, Inc.
("ETP"). The lease contract implemented Hebert's ATM investment by having the IRA
custodian (Mid-Ohio) lease the laser tag equipment (ATM investment) to ETP. Under the
contract, ETP would then make the lease payment to Hebert. Because the lessee has a
Houston, Texas, address, and the equipment is located in Pasadena, Texas, Hebert argues
the provisions amount to an agreement to provide specific services for Texas residents in
Texas that are directly related to the underlying investment and cause of action. Based on
these activities, Hebert argues appellants should reasonably have expected to be haled into
a Texas court, and specific jurisdiction is established.

 The analysis must be filtered through the minimum contacts construct set out by the
United States Supreme Court and the Texas Supreme Court. See International Shoe, 326
U.S. 316-20; Guardian Royal, 815 at 230-32. Contracting with a Texas resident is not by
itself sufficient to subject a nonresident defendant to jurisdiction in Texas. See 
Experimental Aircraft Ass'n, Inc. v. Doctor, 76 S.W.3d 496, 507-08 (Tex. App.-- Houston
[14th Dist.] 2002, no pet.); see also U-Anchor Adver., Inc. v. Burt, 553 S.W.2d 760, 763
(Tex. 1977). And partial performance of a contract in Texas is not the sine qua non of
personal jurisdiction. Magnolia Gas Co. v. Knight Equip. & Mfg. Corp., 994 S.W.2d 684,
692 (Tex. App.--San Antonio 1998, no pet.), overruled on other grounds by Marchand,
835 S.W.3d at 794. Further, minimum contacts are not satisfied by merely engaging in
communications with a Texas corporation during performance of the contract. Magnolia
Gas Co., 994 S.W.2d at 691. Numerous telephone and facsimile communications with
people in Texas relating to a contract do not necessarily establish minimum contacts. 
TeleVentures, Inc. v. International Game Tech, 12 S.W.3d 900, 910 (Tex. App.--Austin
2000, pet. denied). 

 As further reflected by appellants' arguments and documents in the record, Mid-Ohio's implementation of Hebert's investment directives by the lease agreements with third
parties falls within the administrative function of its custodial role set out in the IRA
custodial agreement. Pursuant to that agreement, the investments were self-directed, and
the other contracts served to effectuate those investment directions. By constructing the
rollover IRA contracts to provide that the agreement would be governed by Ohio's laws
and courts, Mid-Ohio demonstrated it did not intend to avail itself of the benefits and
protections of Texas law or courts. We conclude, based on the record before us, that
appellants' relationship with Texas is too attenuated to support specific jurisdiction, and
the activities set forth in the record do not justify a conclusion that appellants could
reasonably anticipate being haled into a Texas court. 

 Third, Hebert contends the trial court has general jurisdiction over appellants for
the following reasons: Mid-Ohio is licensed to sell securities in Texas; agents have
distributed Mid-Ohio IRA forms in Texas; appellants contact a Texas resident through
statements, invoices, and charge fees once an IRA owned by a Texas resident is rolled
over to Mid-Ohio (now Equity Trust); appellants solicit further business from Texas
residents who perform any contract related to these IRAs in Texas; and appellants' pattern
of conducting business as a provider of financial custodial services to Texas residents is
considered to be banking services in Texas under Tex. Fin. Code Ann. § 182.001
(Vernon Supp. 2004). 

 Hebert submitted the following additional evidence: Mid-Ohio's contracts with
three other Texas residents; a letter to a fourth Texas resident that explains why Mid-Ohio
would no longer serve as custodian for viaticals; an Equity Trust brochure explaining the
transfer of Mid-Ohio's custodial business to Equity and touting Mid-Ohio's customer
accounts in all fifty states; a document indicating Mid-Ohio is a licensed broker dealer in
Texas; and an Equity invoice for Hebert's annual maintenance fees. 

 General jurisdiction requires a showing that the defendant conducted substantial
activities within the forum, a more demanding minimum contacts analysis than that for
specific jurisdiction. Marchand, 83 S.W.3d at 797. In Helicopteros, Helicol, a foreign
corporation, negotiated a contract in Texas, purchased approximately eighty percent of its
helicopter fleet and other related equipment from Texas vendors at regular intervals, and 
sent pilots and other personnel to Texas for training. 466 U.S. 409-411. The United
States Supreme Court concluded the contacts did not constitute the kind of continuous and
systematic general contacts necessary for general jurisdiction. 466 U.S. at 418-19. Courts
look to the quality, not the quantity, of the contacts. American Type Culture Collection,
Inc., 83 S.W.3d at 809-810. We are not persuaded that the quality of appellants' contacts
support general jurisdiction. 

 Mid-Ohio is an Ohio company with its offices in Elyria, Ohio. Equity is a South
Dakota banking company with offices at Elyria, Ohio; Equity purchased the IRA
retirement account custodial business from Mid-Ohio in April 2003. By virtue of custodial
IRA contracts with Texas residents, appellants have had contacts with Texas residents. As
noted above, however, the holding of a license to sell securities does not, without more,
establish general jurisdiction. Neither does acting as a custodian of IRA accounts in Ohio
mean that one is engaged in the banking business in Texas. Here, the volume of contracts
is no bedrock fact supporting jurisdiction. Hebert submitted evidence of three other Mid-Ohio IRA custodial accounts with Texas residents, but there is no evidence in the record
of the number of such agreements in Texas. Although Equity acknowledges it has a
"national clientele," it says it does not actively advertise or solicit in Texas. Even mass
mailings to clients and customers do not necessarily establish sufficient contacts for general
personal jurisdiction. See National Indus. Sand Ass'n v. Gibson, 897 S.W.2d 769, 774
(Tex. 1995) Mid-Ohio says it engages in internet advertising that originates from its home
office in Elyria, Ohio. Passive websites used only for advertising over the internet are not
sufficient to establish minimum contacts even though they are accessible to residents of a
particular state. See Michel v. Rocket Eng'g Corp., 45 S.W.3d 658, 677 (Tex. App.--Fort
Worth 2001, no pet.). According to Richard Desich, vice-president of Mid-Ohio, and
David Hanick, president of Equity, appellants do not have offices, employees, agents, or
representatives in Texas. Appellants do not have a physical presence in Texas; they
perform their IRA custodial account "operations" outside Texas; and they construct their
custodian contracts to ensure they do not benefit from Texas laws. Under these facts,
neither the non-internet contacts nor the internet contacts are sufficient to establish general
jurisdiction in Texas. 

 We need not address the alter ego issue. Even if Equity is the alter ego of Mid-Ohio, neither one had minimum contacts with Texas residents sufficient to subject
appellants to the jurisdiction of Texas courts. We conclude the trial court had neither
specific nor general jurisdiction over appellants. 

 In issue three, appellants argue certain findings of fact and conclusions of law are
unsupported by the evidence. We have addressed the findings and conclusions pertinent
to the special appearance issue. We have no jurisdiction to address those unrelated to that
issue. 

 We reverse the trial court's order denying the special appearances and remand this
case to the trial court with instructions to dismiss the claims against appellants for lack of
personal jurisdiction. 

 REVERSED AND REMANDED. 

 PER CURIAM

 


Submitted on September 9, 2004

Opinion Delivered November 4, 2004


Before McKeithen, C.J., Burgess and Gaultney, JJ.
1. Appellants' interlocutory appeal includes an issue on the trial court's denial of its
motion to dismiss based on a venue clause in the IRA agreement. We do not have
jurisdiction to address this issue. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014
(Vernon Supp. 2004). 
2. See Act of May 15, 1995, 74th Leg., R.S., ch. 228, § 10, 1995 Tex. Gen. Laws
1983, 1993-97, repealed by Act of May 27, 2001, 77th Leg., R.S., ch. 1091, § 2.24, 2001
Tex. Gen. Laws 2399, 2419.