

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00325-CV

**THE RE FAMILY TRUST** and Shea Ungar a/k/a
Hershey Ungar, Trustee of the Re Family Trust,
Appellants

v.

**THE CONESTOGA SETTLEMENT TRUST** and
American National Insurance Company,
Appellees

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CI-17464
Honorable David A. Berchelmann, Jr., Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:    Karen Angelini, Justice
Phylis J. Speedlin, Justice
Marialyn Barnard, Justice

Delivered and Filed:  December 5, 2012

AFFIRMED

The Conestoga Settlement Trust ("Conestoga"), a Texas trust, filed suit in Bexar County, Texas against Appellants the RE Family Trust and Shea Ungar a/k/a Hershey Ungar, Trustee of the Re Family Trust ( "Ungar"), located in New York and New Jersey respectively.  Appellants filed a special appearance alleging a lack of personal jurisdiction.  The trial court denied the special appearance.

On appeal, Appellants argue: (1) the purchase of a life insurance policy by a nonresident from an insurance company headquartered in Texas does not subject the nonresident to general or specific jurisdiction in Texas; (2) limited correspondence by a nonresident to a Texas resident does not subject the nonresident to personal jurisdiction in Texas even if one of the letters is allegedly tortious in nature; and (3) a single tortious communication from a nonresident to a Texas resident does not subject the New York resident to personal jurisdiction in Texas. We affirm the judgment of the trial court.

## FACTUAL BACKGROUND

The RE Family Trust, owner of several life insurance policies on the life of Rachel Einhorn, was created in New York on July 15, 2007. One of these policies was issued by American National Insurance Company ("ANICO") in the amount of $10 million. ANICO's offices were located in Texas and all payments and documents were forwarded to Texas. Rachel Einhorn signed the contract in New York and Ungar signed the contract in New Jersey. In June of 2010, the RE Family Trust entered into acquisition negotiations regarding the ANICO policy with the James Settlement Trust ("James"), a Nevada corporation. On June 21, 2010, James acquired ownership of the ANICO policy. Approximately one year later, on July 19, 2011, James transferred ownership to Conestoga.

On August 22, 2011, approximately one month after Conestoga obtained ownership of the ANICO policy, Rachel Einhorn passed away. On September 28, 2011, Gary Sazar, a New York attorney representing the RE Family Trust, faxed a letter to ANICO, at its Texas offices, advising the insurer he was investigating the policy transfer to James and requesting ANICO not pay out death benefits prior to the completion of his investigation.

On October 3, 2011, Thomas Legrand, a Texas ANICO employee, contacted Sazar by telephone requesting additional information. Legrand faxed Sazar a follow-up correspondence

ten days later. Conestoga also faxed Sazar a letter on October 13, 2011 requesting Sazar advise ANICO that the RE Family Trust was relinquishing all rights and benefits to the ANICO policy.

On October 16, 2011, Sazar faxed further correspondence to ANICO stating the investigation was waiting for receipt of the James Settlement Trust transfer documents. On October 18, 2011, ANICO responded with the requested documents. On October 19, 2011, Conestoga sent another letter to Sazar certifying Sazar was in possession of the necessary documents and renewing its earlier demand that Sazar withdraw his request that ANICO withhold payment of the policy proceeds. That same day, Sazar sent correspondence indicating he would not withdraw his request prior to finalizing his investigation. Shortly thereafter, Conestoga filed suit alleging: (1) ANICO's failure to pay policy benefits; and (2) the RE Family Trust's tortious interference with Conestoga's rights to those benefits.

On December 27, 2011, the RE Family Trust and Ungar filed a special appearance arguing Texas lacked personal jurisdiction over them. More specifically, Appellants asserted Conestoga failed to prove either significant contacts within Texas or the conducting of business in Texas. The trial court denied the special appearance. This appeal ensued.

## STANDARD OF REVIEW

Whether a trial court has personal jurisdiction over a defendant is a question of law and subject to de novo review. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *see also Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). When a factual dispute exists, as it does here, an appellate court is called upon to review the trial court's resolution of the factual dispute. *BMC Software*, 83 S.W.3d.at 794; *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). "When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied." *BMC Software*,

83 S.W.3d at 795; *see also Coleman*, 83 S.W.3d at 806 (reviewing court presumes the trial court resolved all factual disputes in favor of its judgment); *Spir Star AG v. Kimich*, 310 S.W.3d 868, 871-72 (Tex. 2010). These implied findings, however, are not conclusive and may be challenged for sufficiency based on the clerk's and reporter's records. *BMC Software*, 83 S.W.3d at 795.

## PERSONAL JURISDICTION

The parties agree that both the RE Family Trust and Ungar are nonresidents of Texas. The question is whether there were sufficient business contacts to satisfy the Texas long-arm statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041-.045 (West 2010). More specifically, Texas Civil Practices and Remedies Code section 17.042 provides that "a nonresident does business in this state if the nonresident: (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state. . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (West 2011).

Texas courts may exercise personal jurisdiction over a nonresident defendant, as authorized under the Texas long-arm statute, provided the exercise of such personal jurisdiction meets federal and state constitutional due process guarantees. *Retamco*, 278 S.W.3d at 337; *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). To meet constitutional due process guarantees, the court must find that (1) the nonresident defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws, and (2) the court's assertion of jurisdiction meets "traditional notions of fair play and substantial justice." *Retamco*, 278 S.W.3d at 338.

The federal standard for personal jurisdiction requires two conditions: (1) establishing minimum contacts with the forum state; and (2) traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977) (holding Texas long-arm statute extends Texas courts'

personal jurisdiction as far as federal due process standard permit, and thus Texas courts rely on precedent set by the United States Supreme Court and other federal courts, as well as Texas' courts, for questions of personal jurisdiction). "A nonresident defendant that has 'purposefully availed' itself of the privileges and benefits of conducting business in the foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction." *BMC Software*, 83 S.W.3d at 795 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76 (1985)).

As plaintiff, Conestoga bore the initial burden of pleading sufficient facts to invoke personal jurisdiction over the RE Family Trust and Ungar under the Texas long-arm statute. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010); *GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 870 (Tex. App.—Austin 2008, no pet.). Upon the plaintiff's allegations of personal jurisdiction, the *Kelly* Court explained the defendant's burden requires negating each of the bases for personal jurisdiction either (1) factually, by disproving the plaintiff's allegations, or (2) legally, by showing that the plaintiff's allegations, even if true, are insufficient to establish jurisdiction. *Kelly*, 301 S.W.3d at 658–59.

Conestoga's Second Amended Petition alleged jurisdiction based on the RE Family Trust doing business in Texas. More specifically, Conestoga alleged the RE Family Trust contracted with a Texas resident when either party was to perform the contract in whole or in part in Texas, and committed a tort in whole or in part in Texas. Based on these allegations, the burden then shifted to the RE Family Trust to negate all forms of personal jurisdiction alleged by Conestoga. *Kelly*, 301 S.W.3d at 658; *GJP*, 251 S.W.3d at 870.

### A. Specific Jurisdiction

To establish specific jurisdiction in this case, (1) the RE Family Trust must have undertaken minimum contacts with Texas by purposefully availing itself of the privilege of

conducting activities here, and (2) the RE Family Trust's liability must have arisen from or been related to those contacts. *Retamco*, 278 S.W.3d at 338; *Moki Mac*, 221 S.W.3d at 576.

Specific jurisdiction may be asserted even where contacts are isolated or sporadic, if the lawsuit's claims arise out of those contacts. *Spir Star*, 310 S.W.3d at 873. Physical presence in the state is not necessary. *See Burger King*, 471 U.S. at 476 (stating that so long as acts are purposefully directed toward the plaintiff ". . . we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there"). The notion of purposeful availment insures the nonresident defendant's contacts result from its own purposeful activity and not the unilateral activity of the plaintiff or a third party. *Experimental Aircraft Ass'n, Inc. v. Doctor*, 76 S.W.3d 496, 504 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Although not determinative, foreseeability is an important consideration in deciding whether the nonresident defendant has purposefully established "minimum contacts" with the forum state. *BMC Software*, 83 S.W.3d at 795.

### B. Purposeful Availment

For the purpose of determining if a nonresident defendant purposefully availed itself of the privilege of conducting activities in Texas, (1) only the defendant's contacts with the forum are relevant, (2) the contacts must be purposeful rather than random, fortuitous, or attenuated, and (3) the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Retamco*, 278 S.W.3d at 338–39; *Moki Mac*, 221 S.W.3d at 575 (recognizing there are three parts to a "purposeful availment" inquiry). More specifically, Appellants' activities, whether direct acts within Texas or conduct outside Texas, must justify a conclusion that the Appellants could reasonably anticipate being called into a Texas court. *Retamco*, 278 S.W.3d at 338; *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Therefore, our

application of this analysis focuses not on the number of contacts, but the quality of the RE Family Trust's contacts. *Retamco*, 278 S.W.3d at 339.

Much of Appellants' argument is based on *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777 (Tex. 2005), in which Holten, a Texas resident, contacted Michiana, an RV "factory outlet" located in Indiana with no employees or property in Texas and not authorized to do business in Texas. *Id.*at 783. Michiana did not advertise in Texas or on the Internet, and did not solicit business from Holten or any other Texas resident. *Id.* Holten initiated the call to Michiana, in Indiana, and entered into an agreement to purchase an RV. *Id.* He sent payment to Indiana and took delivery in Texas, paying for delivery himself. Dissatisfied with his RV, Holten subsequently sued Michiana in Texas, alleging misrepresentations by the company during the phone call. The Texas Supreme Court held Michiana lacked minimum contacts with Texas because it had not purposefully availed itself of the privilege of conducting activities in Texas. *Id.*, at 786–87; *see also Moki Mac*, 221 S.W.3d at 577 ("the mere sale of a product to a Texas resident will not generally suffice to confer specific jurisdiction upon our courts. . . . the facts alleged must indicate that the seller intended to serve the Texas market.").

In the present case, Appellants purchased the original policy from ANICO, a Texas corporation. Although Appellants argue lack of knowledge as to where ANICO was located, the forms signed by Ms. Einhorn and Ungar all specifically provide ANICO with an address in Galveston, Texas. From July 2007 to June 2010, all premiums were paid to ANICO in Texas. During that time, the policy provided the RE Family Trust with continuous, systematic and ongoing benefits, advantages and legal rights that Appellants could have enforced in Texas. *See Michiana*, 168 S.W.3d at 784. When the policy was transferred to James, in June of 2010, a change of ownership and beneficiary were sent to Texas. Although Appellants questioned the transfer and blamed their delayed investigation on the lack of James documents, Ungar himself

signed the documents transferring the life insurance policy to the James Settlement on June 21, 2010.

Subsequently, after Ms. Einhorn passed away and the policy came due, Appellants submitted a Notice of Claim seeking the benefits under the life insurance policy to ANICO in Texas. Appellants further directed at least three letters and one phone call to ANICO. The explicit purpose of each of these communications was to deter ANICO from paying out the proceeds of the policy. Conestoga specifically notified Appellants of its intent to sue if Appellants further interfered with the contractual relationship between Conestoga and ANICO, two Texas residents. We cannot conclude that Appellants' continued contacts, in light of the situation at hand, were merely random, fortuitous, or attenuated. *Michiana*, 168 S.W.3d at 785. Accordingly, we hold that the RE Family Trust and Ungar purposefully availed themselves of the privileges of conducting activities in the State of Texas. *Retamco*, 278 S.W.3d at 338.

## C. Liability Resulting for Contacts

"[P]urposeful availment alone will not support an exercise of specific jurisdiction . . . unless the defendant's liability arises from or relates to the forum contacts." *Moki Mac*, 221 S.W.3d at 579; *see also Burger King*, 471 U.S. at 472. Although Conestoga made several requests on Appellants to withdraw their demand that ANICO withhold payment, Appellants were steadfast in their allegations and continued interference. Based on the record before us, there is little question the lawsuit arose from, or was at least related to, Appellants' contacts with Texas. The original letter dated September 28, 2011 prompted Conestoga's tortious interference claim. Additionally, Conestoga notified Appellants on at least two different occasions that their continued actions would subject them to suit in Texas. In response, however, Appellants elected to provide further correspondence to ANICO that Appellants were not withdrawing their demand

that ANICO withhold payment. Accordingly, Appellants' liability arose from or was related to its contacts with Texas.

### D. Federal Due Process Concerns

Having found personal jurisdiction under the Texas standards, we look to whether Conestoga's suit satisfies the dual prong federal standard for personal jurisdiction. The first prong questions whether Appellants established minimum contacts with the forum state. *Int'l Shoe*, 326 U.S. at 316; *BMC Software*, 83 S.W.3d at 795. For the same reasons that Appellants "purposefully availed themselves of the privilege of conducting activities within [Texas]," Appellants have satisfied the minimum contacts requirement. *See Michiana*, 168 S.W.3d at 784 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

We thus turn to the second prong inquiry of whether an assertion of jurisdiction over Appellants comports with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316; *BMC Software*, 83 S.W.3d at 795. "Only in rare cases, however, will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991) (citing *Burger King*, 471 U.S. at 477–78). Our analysis is based on the consideration of the following: (1) the burden on defendants; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the efficient resolution of controversies; and (5) the shared interest of the several States in further fundamental substantive social policies. *Retamco*, 278 S.W.3d at 341.

Although an additional burden is obviously created on Appellants, it is not the only factor we consider. Two of the three parties, and the majority of the witnesses, reside in Texas. Both

Conestoga and ANICO have a strong interest in resolving the controversy in Texas, predominantly that the litigation began in Texas. The origin of all the activities is based in Appellants' choice to purchase a policy from a Texas entity. We, therefore, conclude the Texas trial court's exercise of jurisdiction over Appellants does not offend traditional notions of fair play and substantial justice.

## CONCLUSION

Because Appellants the RE Family Trust and Ungar purposefully availed themselves of conducting activities in Texas and the pending lawsuit arose from or was related to Appellants' contacts with Texas, we conclude Conestoga established the Texas court's possession of specific jurisdiction over Appellants. Moreover, Conestoga established minimum contacts and Texas jurisdiction over Appellants does not offend traditional notions for fair play and substantial justice. Accordingly, we affirm the judgment of the trial court.


Phylis J. Speedlin, Justice